# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LUCIEN SNYDER** | : | |
| 1621 Warren Avenue | : | |
| Williamsport, PA 17701 | : | |
| | : | |
| Plaintiff, | : | JURY DEMANDED |
| | : | |
| v. | : | |
| | : | |
| **LARSON DESIGN GROUP, INC.** | : | |
| 1000 Commerce Park Dr., Suite 201 | : | No.: |
| Williamsport, PA 17701 | : | |
| | : | |
| Defendant. | : | |

## CIVIL ACTION COMPLAINT

And now Plaintiff, Lucien Snyder, by and through his undersigned counsel, files this Complaint alleging that his rights pursuant to the Americans with Disabilities Act of 1990, the Pennsylvania Human Relations Act and the Family Medical Leave Act have been violated, and avers as follows:

## I.  Parties and Reasons for Jurisdiction.

1.     Plaintiff, Mr. Snyder (hereinafter "Snyder"), is an adult individual residing at the above address.

2.     Defendant, Larson Design Group, Inc., (hereinafter "Defendant" or "LDG") is a company organized and existing under the laws of the Commonwealth

of Pennsylvania, registered to do business in the Commonwealth of Pennsylvania, and with a principle place of business at the above address.

3.     At all times material hereto, Defendant employed Mr. Snyder in Pennsylvania at the above captioned address and qualified as Mr. Snyder's employer under the Americans with Disabilities Act, the Pennsylvania Human Relations Act and the Family Medical Leave Act.

4.     At all times material hereto, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

5.     Mr. Snyder exhausted his administrative remedies pursuant to the Equal Employment Opportunity Act.  (See Exhibit "A," a true and correct copy of a dismissal and notice of rights issued by the Equal Employment Opportunity Commission.)

6.     This action is instituted pursuant to the Americans with Disabilities Act ("ADA"), the Pennsylvania Human Relations Act ("PHRA") and the Family Medical Leave Act ("FMLA").

7.     Jurisdiction is conferred by 28 U.S.C. §§ 1331 and 1343.

8.     Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this district, and because a substantial part of the acts and/or omissions giving rise to the claims set forth

herein occurred in this judicial district.  Mr. Snyder was working for Defendant in the Middle District of Pennsylvania at the time of the illegal actions by Defendant as set forth herein.

## II. Operative Facts.

9.      By way of background, Mr. Snyder had childhood (ALL) Acute Lymphoblastic Leukemia in 1992.

10.      In 2010 Mr. Snyder had thyroid cancer resulting in a thyroidectomy surgery followed by brain surgery for an aggressive meningioma brain tumor.

11.      On or about November 11, 2011, Mr. Snyder started working at LDG as a temp worker, being placed into employment by DePasquale Staffing Services.

12.      On October 16, 2013, Mr. Snyder underwent a second brain surgery for an aggressive meningioma brain tumor.

13.      Due to Mr. Snyder's quick learning, great attitude, drive to learn and grow and being a great team player LDG decided to hire Mr. Snyder full time through LDG March 5, 2012.

14.      Mr. Snyder was initially hired as a non-exempt Engineering Technician to perform surveys of existing buildings, research construction materials and methods and generate applicable drawing sets.

15.    Mr. Snyder was an exemplary employee during his employment at LDG and received merit increases every year from 2012 through 2022, and was promoted to Senior Engineering Technician on March 29, 2020.

16.    Mr. Snyder currently has six meningioma brain tumors, two of which are growing near his optic nerve in his right eye.

17.    From March 4, 2020, through April 10, 2020, Mr, Snyder received six weeks of radiation treatments for these tumors in hopes of preventing them from growing into the optic nerve and causing vision loss or causing loss of his eye entirely.

18.    Mr. Snyder was halfway through his treatments when COVID hit in 2020 and LDG moved all employees to a work from home situation company wide.

19.    Mr. Snyder underwent Gamma Knife Radiation Surgery on January 31, 2022.

20.    Around this time Mr. Snyder developed symptoms such as vision changes, flashes of light when he closed his eyes, eye pain, blurred vision, swelling to his eye and eye lid and constant headaches. He followed up with his neuro ophthalmologist and it was discovered that he had retinal scarring and hemorrhaging caused from the radiation in 2020.

21.     Due to the radiation treatments Mr. Snyder also has symptoms such as (but not limited to) extreme photosensitivity, eye pain, eye fatigue, a lazy eye lid, blurred vision, hypothalamic dysfunction (which causes his blood pressure to spike to levels at which he's at risk for a stroke when he is exposed to summer heat or excessive sun exposure), brain fog, memory issues, trouble staying focused, confusion, disorientation, vision issues, debilitating headaches and seizures.

22.     On or around February 2022, Mr. Snyder returned to work after radiation. He was on FMLA for two weeks for radiation and recovery. Mr. Snyder continued to work remotely as did most of the coworkers. LDG was converting to Office 365 and was going to remove employee's personal folders, so he backed up his personal folder to a personal thumb drive.

23.     Mr. Snyder did this to try and be proactive and not lose design calculations needed for the job. Mr. Snyder did not know this was something he wasn't allowed to do.

24.     IT would have been notified of this as they get notified of any personal thumb drives that get plugged into work laptops. However, nothing was ever said to Mr. Snyder at this point that this was something he wasn't supposed to do.

25.     On or around June or July of 2022, Mr. Snyder started working on a new CVS client project. They required new specific standards and layouts that were new and unfamiliar to him.

26.     Mr. Snyder had no direction from a supervisor and was trying to figure out this new learning curve and important client by himself. There were design changes that he was not made aware. There was definitely a lack of communication and leadership.

27.     While Mr. Snyder did receive a start of project email with basic instructions from Ms. Lilley, Project Lead, and Mr. Sweeley, his supervisor.

28.      Mr. Sweeley was aware that this was Mr. Snyder's very first CVS project and that he was not familiar with CVS standards and layouts.

29.     Despite this, Mr. Sweeley placed Mr. Snyder on the project and then took a 2-week vacation at the beginning of the project followed by medical leave through the company's FMLA.

30.     Mr. Snyder tried his best and used the knowledge and experience that he had gained over the course of the 10.5 years at the company, all while trying to adapt to CVS standards with no supervision and lack of communication from his team and Ms. Lilley.

31.     Mr. Snyder was not included in team emails regarding the project, and he even brought this issue up with his Mr. Sweeley.

32.     It wasn't until the project was about to go over budget that Ms. Lilley reached out to Mr. Snyder claiming that, he went "rogue" and continued to belittle and bully him via email and messages the following morning.

33.     Ms. Lilley could have reached out to check in on Mr. Snyder's progress during the duration of the project or ask if he needed help or better understanding of the standards but failed to do so.

34.     Mr. Snyder then helped complete the project with the CVS team and Ms. Lilley while simultaneously working on a second CVS project and other client's projects as well.

35.     On or around July 25, 2022, Mr. Snyder was called into the office to go on PIP (Performance Initiative). Mr. Snyder strongly feels this was because of the CVS project. CVS is a major money-making client for LDG and because they felt like he "dropped the ball" on this project, he was now being punished for it.

36.     Mr. Snyder mentioned at the PIP meeting about Julie's very unprofessional, harsh and bully like behavior towards him and they responded with "oh, we already handled it".

37.     Also, at this meeting Mr. Snyder expressed with great concern that he had developed symptoms from brain radiation and that he was not going to be able to work in the office setting because of the harsh fluorescent lighting and his extreme photosensitivity.

38.     Alyssa Wagner of Human Resources, ("HR") told Mr. Snyder that, "Pennsylvania is an at will state and if he didn't go on PIP and work in the LDG office building then he would be fired". So, not having any option, Mr. Snyder tried to push through working in the building. LDG never offered to or made any accommodations for Mr. Snyder's disabilities.

39.     Mr. Snyder started working in the LDG building despite his medial concerns because he has children to provide for and was thinking of his family's best interests.

40.     Towards the end of the PIP, Mr. Snyder had an episode where he was walking down the hallway and he got a very sharp headache that was severe. Mr. Snyder got dizzy and disoriented and felt weak like he was going to collapse. His knees buckled out from under him, and he braced himself against the wall.

41.     That evening after work, Mr. Snyder emailed his oncologist and asked them to provide a letter explaining his diagnosis and symptoms from radiation.

42.     Mr. Snyder also completed Short Term Disability ("STD") paperwork at this time because he could not continue to work in the building due to his symptoms.

43.     On or around August 29, 2022, during a follow up meeting at the conclusion of his PIP, Mr. Sweeley and HR said that Mr. Snyder was doing great with his performance and meeting deadlines, getting projects done under budget-essentially that he was doing great and they were pleased with his work.

44.     Mr. Snyder then brought up the issue that now that PIP was over, he really needed to go back to working remotely where he could control the lighting. Mr. Sweeley and HR were hesitant to let Mr. Snyder go back to working remotely.

45.     Mr. Snyder gave Mr. Sweeley and HR the letter from his oncologist and he filled out short term disability paperwork and told Mr. Sweeley and HR that if he was not able to go back to working remotely that he would need to go on short term disability that would eventually become long term disability as his prognosis is indefinite and he could not continue to work in the office environment.

46.     HR reacted in an unprofessional way and rudely said, "well, if you go on short term disability you will not be working any longer," "you won't be able to finish the projects you are currently working on". They were very aggressively pushing FMLA and a hybrid work schedule instead of short-term disability.

47.     LDG said if Mr. Snyder went on FMLA then he could continue to work, take off any time that he needed if he were feeling unwell and said they would also send a safety team (East coast risk management) to put UV screens on the windows, put bluescreen covers on the laptop screens and put in dimmable lights at both the work office and his home office.

48.     This sounded like a reasonable compromise, so Mr. Snyder went back to working remotely, on FMLA. After a month, Mr. Snyder didn't hear anything back from HR about the East Coast Management Safety Team regarding making accommodations for his disabilities.

49.     Upon information and belief, on or around August 4th, 2022, LDG became aware of about a dozen employees using unsupported web browsers.

50.     At no time did IT or HR advise Mr. Snyder to stop using the browser because it was unsupported.

51.     Upon information and belief, Mr. Snyder was the only employee disciplined for breaking the User Agreement and using unsupported web browsers.

52.     Mr. Snyder backed up his thumb drive back in February of 2022.

53.     Upon information and belief, IT would have been notified at that time as they are notified of all thumb drives that get plugged into LDG equipment.

54.     On or around August 30 2022, Mr. Snyder followed up with his Superior, Dave Balzer with an email regarding the PIP meeting and his concern for

his disabilities, health and safety and the possible need for short term disability. This was because HR was continuing to disregard his medical concerns even after they were provided a letter from his radiation oncologist.

55.     On or around September 23, 2002, Mr. Snyder was terminated. The reason they gave was that he had violated company policy on multiple fronts, including breaching the User Agreement for using unsupported web browsers and backing up information to a thumb drive, which is pretext.

56.     As a direct and proximate result of Defendant's conduct in terminating Mr. Snyder's employment, Mr. Snyder has sustained great economic loss, future lost earning capacity, lost opportunity, loss of future wages, as well emotional distress, humiliation, pain and suffering and other damages as set forth below.

**III. Causes of Action.**

**COUNT I**
**TITLE I CLAIM--AMERICANS WITH DISABILITIES ACT**
**DISCRIMINATION**
**(42 U.S.C.A. § 12101 et seq)**

57.     Plaintiff incorporate the preceding paragraphs as if fully set forth at length herein.

58.     At all times material hereto, and pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq, an employer may not discriminate against an employee based on a disability.

59.    Plaintiff is qualified employee and person within the definition of Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

60.    Defendant is an "employer" and thereby subject to the strictures of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

61.    At all times material hereto, Plaintiff had qualified disabilities, as described above.

62.    Plaintiff's brain tumors and radiation therapy substantially limited one or more of his major life activities, including, sleeping, concentrating, seeing, caring for himself and working.

63.    Defendant's conduct in terminating Plaintiff's is an adverse action, was taken as a result of his disabilities and constitutes a violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

64.    Defendant failed to engage in an interactive discussion of Plaintiff's disabilities and failed to reasonably accommodate his disabilities.

65.    As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of

opportunity, and a permanent diminution of earning power and capacity and a claim is made therefore.

66.     As a result of the conduct of Defendant's owners/management, Plaintiff hereby demand punitive damages.

67.     Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq Plaintiff demand attorneys' fees and court costs.

## COUNT II-
## AMERICANS WITH DISABILITIES ACT FAILURE TO ACCOMMODATE
## (42 U.S.C.A. § 12101 et seq)

68.     Plaintiff incorporate the preceding paragraphs as if fully set forth at length herein.

69.     At all times material hereto, and pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq., an employer may not discriminate against an employee based on a disability.

70.     Mr. Snyder is a qualified employee and person within the definition of Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

71.     Defendant is an "employer" and thereby subject to the strictures of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

72.     At all times material hereto, Mr. Snyder has a qualified disability, as described above.

73.    Mr. Snyder's brain tumors and radiation therapy substantially limited the major life activities of sleeping, concentrating, seeing, caring for himself and working.

74.    Mr. Snyder's remained qualified to perform his essential job functions with or without a reasonable accommodation.

75.    Mr. Snyder's brain tumors and radiation therapy was a qualifying disability under the Americans with Disabilities Act ("ADA").

76.    Defendant's conduct in refusing to provide Mr. Snyder with reasonable accommodations for his disability after receiving notice of said disability constitutes a violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

77.    Defendant failed to engage in the interactive process after Mr. Snyder told Defendant that he needed medical accommodations.

78.    Defendant failed to reasonably accommodate Mr. Snyder's disability.

79.    As a proximate result of Defendant's conduct, Mr. Snyder has sustained significant damages, including but not limited to: emotional distress, mental anguish, humiliation, pain and suffering, and consequential damages.

80.    As a result of the conduct of Defendant's owners/management, Mr. Snyder hereby demands punitive damages.

14

81.     Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq., Mr. Snyder demands attorneys' fees and court costs.

## COUNT III
## TITLE I CLAIM--AMERICANS WITH DISABILITIES ACT RETALIATION
## (42 U.S.C.A. § 12101 et seq)

82.     Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

83.     At all times material hereto, and pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq, an employer may not retaliate against an employee based his exercising his rights under the Americans with Disabilities Act.

84.     Plaintiff is a qualified employee and person within the definition of Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

85.     Defendant is an "employer" and thereby subject to the strictures of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq.

86.     As set forth above, Plaintiff engaged in protected activity when he requested accommodations for his disability.

87.     Defendant failed to engage in the interactive process after Plaintiff told Defendant that he needed medical accommodations.

88.     As a proximate result of Defendant's conduct, Plaintiff  sustained significant damages, including but not limited to: great economic loss, future lost

earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

89.    As a result of the conduct of Defendant's owners/management, Plaintiff hereby demands punitive damages.

90.    Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq Plaintiff demands attorneys' fees and court costs.

### COUNT IV
### VIOLATION OF PENNSYLVANIA HUMAN RELATIONS ACT
### DISABILITY DISCRIMINATION
### (43 P.S. § 951, *et seq.*)

91.    Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

92.    At all times material hereto, and pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq, an employer may not discriminate against an employee as a result of that employee's disability.

93.    Plaintiff is a qualified employee and person within the definition of Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

94.    Defendant is Plaintiff's "employer" and thereby subject to the strictures of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

95.     Defendant's conduct in terminating Plaintiff is an adverse action, was taken as a result of his disability and constitutes a violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

96.     As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity and a permanent diminution of his earning power and capacity and a claim is made therefore.

97.     Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq., Plaintiff demands attorney's fees and court costs.

## COUNT V
## VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT
## RETALIATION
## (43 P.S. § 951, *et. seq.*)

98.     Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

99.     At all times material hereto, and pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq., an employer may not retaliate against an employee as a result that employee engaging in protected activity.

100.   Mr. Snyder is a qualified employee and person within the definition of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

101.   Defendant is Mr. Snyder's "employer" and thereby subject to the strictures of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

102.   Defendant's termination of Mr. Snyder's employment constituted retaliation for his engaging in protected activity of requesting leave and accommodations for his disability, and therefore was in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq.

103.   As a proximate result of Defendant's conduct, Mr. Snyder sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Mr. Snyder has also sustained work loss, loss of opportunity and a permanent diminution of his earning power and capacity and a claim is made therefore.

104.   Pursuant to the Pennsylvania Human Relations Act, 43 P.S. § 951, et seq., Mr. Snyder demands attorneys' fees and court costs.

**COUNT VI**
**VIOLATION OF FMLA—INTERFERENCE**
**(29 U.S.C. §2601 et seq.)**

105.   Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

106.   As set forth above, Plaintiff was entitled to medical leave pursuant to the FMLA, 29 U.S.C. §2601, et seq.

107.   As described above, Defendant interfered with, restrained and denied Plaintiff's exercise and/or attempts to exercise his rights under the Family and Medical Leave Act.

108.   As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

109.   As a result of the conduct of Defendants' owners/management, Plaintiff hereby demands punitive and/or liquidated damages.

110.   Pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, et seq Plaintiff demands attorney's fees and court costs.

**COUNT VII**
**VIOLATION OF FMLA**
**RETALIATION**
**(29 U.S.C. §2601 et seq.)**

19

111.   Plaintiff incorporates the preceding paragraphs as if fully set forth at length herein.

112.   As set forth above, Plaintiff was entitled to and qualified for medical leave pursuant to the FMLA, 29 U.S.C. §2601, et seq.

113.   Defendant's motivation in terminating Plaintiff's employment was based, in part, upon his taking permissible FMLA leave.

114.   As a proximate result of Defendant's conduct, Plaintiff sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and Plaintiff has also sustained work loss, loss of opportunity, and a permanent diminution of his earning power and capacity and a claim is made therefore.

115.   As a result of the conduct of Defendant's owners/management, Plaintiff hereby demands punitive and/or liquidated damages.

116.   Pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §2601, et seq Plaintiff demands attorneys' fees and court costs.

**WHEREFORE,** Plaintiff, Lucien Snyder, demands judgment in his favor and against Defendant, Larson Design Group, in an amount in excess of $150,000.00 together with:

A.  Compensatory damages, including but not limited to: back pay, front pay, past lost wages, future lost wages. Lost pay increases, lost pay incentives, lost opportunity, lost benefits, lost future earning capacity, injury to reputation, mental and emotional distress, pain and suffering

B.  Punitive damages;

C.  Attorneys' fees and costs of suit;

D.  Interest, delay damages; and,

E.  Any other further relief this Court deems just proper and equitable.

**LAW OFFICES OF ERIC A. SHORE, P.C.**

BY: _/s/Mary LeMieux-Fillery, Esquire_

**MARY LEMIEUX-FILLERY, ESQUIRE**
(PA I.D. 312785)
Two Penn Center
1500 JFK Boulevard, Suite 1240
Philadelphia, PA 19102
Ph: 267-546-0132
Fx: 215-944-6124
*Attorney for Plaintiff, Lucien Snyder*

Date: 07/07/2023

**VERIFICATION**

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.S. § 4904, relating to unsworn falsification to authorities.

07/07/2023

(Date Signed)                                              Lucien Snyder