IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LUCIEN SNYDER,<br>    **Plaintiff** | :  No. 4:23cv1132<br>:<br>:  (Judge Munley) |
| v. | : |
| LARSON DESIGN GROUP, INC,<br>    **Defendant** | :<br>: |

## MEMORANDUM

Before the court is Defendant Larson Design Group, Inc.'s motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 15). This matter is fully briefed and ripe for disposition.[1]

**Background**

Plaintiff Lucien Snyder filed this action against his former employer pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA") and the Pennsylvania Human Relations Act, 43 PA. STAT. § 951, *et seq.*, ("PHRA"). As alleged in the operative amended complaint, plaintiff started working for defendant as a temporary worker in November 2011 before being

---

[1] The Honorable Jennifer P. Wilson transferred this matter to the undersigned on November 7, 2023.

hired as an engineering technician in March 2012.[2] (Doc. 12 ¶¶ 11, 13). In March 2020, defendant promoted plaintiff to senior engineering technician. (Id. ¶ 15). His job duties included performing surveys of existing buildings, researching construction methods and materials, and generating applicable drawing sets. (Id. ¶ 14).

Plaintiff previously treated for thyroid cancer and underwent a thyroidectomy followed by surgery for an aggressive meningioma brain tumor in 2010. (Id. ¶ 10). In October 2013, while employed by defendant, plaintiff underwent a second surgery for a similar brain tumor. (Id. ¶ 12). Plaintiff currently has been diagnosed with six (6) meningioma brain tumors, two (2) of which are growing near the optic nerve of his right eye. (Id. ¶ 16). Between March 4, 2020 and April 10, 2020 and during the time he was promoted, plaintiff received six (6) weeks of radiation treatment to address the tumors in an attempt to avoid vision loss or the loss of his eye. (Id. ¶ 17). Plaintiff also alleges that during this radiation treatment, COVID-19 related closures caused the defendant to move all employees to work-from-home status. (Id. ¶ 18).

---

[2] These brief background facts are derived from plaintiff's amended complaint. At this stage of the proceedings, the court must accept all factual allegations in the complaint as true. Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

In January 2022, plaintiff underwent gamma knife radiation surgery. (Id. ¶ 19). He developed vision issues, eye pain and swelling, and constant headaches around this time. (Id. ¶ 20). Treatment with a neuro-ophthalmologist revealed retinal scarring and hemorrhaging caused by the related radiation treatments. (Id.) Plaintiff also experienced ongoing issues from radiation treatment, including extreme photosensitivity, eye pain and fatigue, blurred vision, hypothalamic dysfunction, brain fog, memory and focus issues, vision issues, confusion, disorientation, debilitating headaches, and seizures. (Id. ¶ 21).

In February 2022, plaintiff returned to work after radiation treatment and continued to work remotely like most of his other coworkers. (Id. ¶ 22). He alleges that defendant was converting to Office 365 software at this time and planned to remove employee's personal folders, so plaintiff backed up this folder to a personal thumb drive. (Id.) Plaintiff alleges he did so to prevent the loss of design calculations needed for his position. (Id. ¶ 23). He avers an unawareness that using a personal thumb drive violated company policies. (Id.)

In June or July 2022, plaintiff began working on a new CVS client project, which required new specific standards and layouts that were unfamiliar to him. (Id. ¶ 25). Plaintiff avers that, although he received an email with basic instructions from the project lead and a supervisor, he did not receive further direction from the supervisor or notification that there were design changes. (Id.

¶¶ 26-27). Per plaintiff, the supervisor placed him on the project shortly before the supervisor took a two-week vacation and medical leave knowing that plaintiff was unfamiliar with CVS standards. (Id. ¶¶ 28-29). Plaintiff also alleges he was not included in team emails regarding the project and brought the issue up with the supervisor. (Id. ¶ 31). When the project was about to go over budget, plaintiff alleges that the project lead contacted him and claimed plaintiff "went 'rogue' and continued to belittle and bully him via email and messages the following morning." (Id. ¶ 32).

On or about July 25, 2022, plaintiff was placed on defendant's performance initiative program ("PIP"), which would require plaintiff's return to the office. (Id. ¶ 35). Plaintiff alleges he raised concerns about the project lead's behavior toward him during the related meeting and defendant's representative "responded with 'oh, we already handled it.' " (Id. ¶ 36). Additionally at this meeting, plaintiff expressed concern that he would not be able to work in an office setting due to fluorescent lighting and his photosensitivity. (Id. ¶ 37). During the meeting, a representative from defendant's human resources department ("HR") told plaintiff that, "Pennsylvania is an at will state and if he did not go on PIP and work in [defendant's] office building then he would be fired." (Id. ¶ 38). Plaintiff agreed to return to the office believing he had no other option despite his symptoms. (Id. ¶¶

4

38-39). Plaintiff alleges that defendant never made any accommodations for his disabilities. (Id. ¶ 39).

Toward the end of PIP review, plaintiff experienced a severe headache, which made him dizzy and disoriented and caused his knees to buckle while he was walking down a hallway. (Id. ¶ 40). That evening, plaintiff emailed his oncologist and asked for a letter explaining his diagnoses and symptoms. (Id. ¶ 41). Plaintiff also completed short-term disability paperwork. (Id. ¶ 42).

At the conclusion of his PIP review, during a follow up meeting on or about August 29, 2022, plaintiff's supervisor and an HR employee told plaintiff that he was "doing great" with his performance, meeting deadlines, and getting projects accomplished under budget. (Id. ¶ 43). At that meeting, plaintiff revisited the issue of remote working. (Id. ¶ 44). Per plaintiff, his supervisor and the HR representative were hesitant. (Id.) Plaintiff provided these individuals with the letter from his oncologist and the short-term disability paperwork and told them that "if he was not able to go back to working remotely that he would need to go on short term disability that would eventually become long term disability" due to his indefinite prognosis and "he could not continue to work in the office environment." (Id. ¶ 45).

As alleged, defendant's HR representative reacted by stating: "well, if you go on short term disability you will not be working any longer," and "you won't be

able to finish the projects you are currently working on." (Id. ¶ 46). Per the amended complaint, defendant "aggressively" advanced intermittent FMLA leave and a hybrid work schedule instead of short-term disability. (Id. at ¶¶ 46-47). Defendant advised plaintiff that, if he used FMLA leave, he could continue to work and take off any time as needed due to illness. (Id. ¶ 47). Defendant also advised plaintiff that it would send a safety team to place ultraviolet light screens on windows, blue light covers on laptop screens, and dimmable lights at both defendant's office location and in plaintiff's home office. (Id.). As a result, plaintiff returned to working remotely using FMLA leave, however, "after about a month" plaintiff did not hear back from the HR department about the safety team making these accommodations. (Id. ¶ 48). Further, plaintiff avers that, on or about August 30, 2022, plaintiff followed up with a superior by email regarding the PIP meeting, his medical issues, and the possible need for short-term disability. (Id. ¶ 54).

Plaintiff alleges that he was terminated on or about September 23, 2022.[3] (Id. ¶ 55). Per plaintiff, defendant cited violations of company policy, including the use of a thumb drive to back up information and the use of unsupported web browsers. (Id.) Plaintiff alleges these reasons are pretext. (Id.).

---

[3] Plaintiff alleges in the amended complaint that he was terminated "[o]n or around September 23, 2002," which appears to be a typographical error.

Based on the foregoing facts, plaintiff's amended complaint asserts the following causes of action: Count I – ADA discrimination claim; Count II – ADA failure to accommodate claim; Count III – ADA retaliation claim; Count IV – PHRA discrimination claim; Count V – PHRA retaliation claim; and Count VI – FMLA retaliation claim. Defendant responded with a motion to dismiss Counts III-V and plaintiff's claim for compensatory damages under Count VI. (Doc. 15). The parties have briefed their respective positions, bringing the case to its present posture.

**Jurisdiction**

Based on the alleged violations of federal law, this court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Additionally, the court has jurisdiction under 28 U.S.C. § 1343(a)(3), which confers jurisdiction of any action commenced to redress the deprivation of any right, privilege, or immunity secured by federal law providing for the equal rights of citizens. The court has supplemental jurisdiction over plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a). ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within

such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").

**Legal Standard**

Defendant filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly 550 U.S. at 555).

On a motion to dismiss for failure to state claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (3d (citations omitted).

8

## Analysis

Defendant moves to dismiss plaintiff's ADA retaliation claim based on a failure to plead causation and his PHRA claims based on a failure to exhaust administrative remedies. The court will address plaintiff's ADA retaliation claim before turning to his PHRA claims. [4]

### 1. Count III – ADA Retaliation Claim

Defendant moves to dismiss plaintiff's claim for retaliation under the ADA.[5] The ADA's anti-retaliation provision provides, in relevant part, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by" the ADA. 42 U.S.C. § 12203(a).

To establish a *prima facie* case of retaliation, a plaintiff must prove: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567–68 (3d Cir. 2002)(citation omitted).

---

[4] Regarding defendant's motion to dismiss the request for compensatory damages in Count VI, that is plaintiff's FMLA retaliation claim, plaintiff concurs that FMLA does not provide for that recovery. (Id., ECF p. 12). Accordingly, defendant's motion to dismiss will be granted as to that request for relief without further discussion.

[5] Regarding Count III, plaintiff concedes that his sole remedy for ADA retaliation claims is equitable relief and that his demand for compensatory damages should be dismissed. (Doc. 18-1, ECF p. 11). As such, this portion of defendant's motion to dismiss will be granted.

9

Defendant challenges whether plaintiff has pled a causal connection between protected activity, that is, his requests for accommodation, and the adverse action, his termination. Specifically, defendant argues that the three-week period between the alleged request for accommodations and termination is insufficient to show a causal connection as a matter of law. (Doc. 7, p. 7). Plaintiff counters that the causation analysis is inherently fact-based and that he sufficiently alleged a causal connection in the amended complaint. (Doc. 18-1, ECF 9-10). The court agrees with plaintiff.

"[I]n cases where a plaintiff must illustrate a 'causal link' for purposes of establishing retaliation, or show that certain conduct was 'used' as a basis for employment decisions, a plaintiff may rely upon a broad array of evidence to do so." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 283–84 (3d Cir. 2000). "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, **or** (2) a pattern of antagonism coupled with timing to establish a causal link." Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)(emphasis added). Where the temporal proximity is not so close as to be unduly suggestive, timing plus other evidence may be an appropriate test for causation. Thomas v. Town of Hammonton, 351 F.3d 108,

114 (3d Cir. 2003) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 513 (3d Cir. 2003)).

In the amended complaint, plaintiff has alleged timing plus other facts to state a *prima facie* ADA retaliation case. Plaintiff alleges that he made a request for accommodation on August 29, 2022 when he asked to return to remote work. (Doc. 12 ¶¶ 43-44). During that same meeting, defendant's representatives discussed plaintiff's performance in a positive manner. (Id. ¶ 43). Per plaintiff, however, his supervisor and the HR representative were hesitant regarding remote work. (Id. ¶ 44). During this meeting, plaintiff discussed taking short-term disability leave if he would be required to remain working at the office. (Id. ¶¶ 44-45). Defendant's HR representative allegedly responded rudely and unprofessionally, "aggressively" promoting intermittent FMLA leave and a hybrid work schedule instead. (Id. ¶ 46). Per the allegations, defendant's representatives also promised plaintiff that it would install ultraviolet light screens on windows, blue light covers on laptop screens, and dimmable lights at both defendant's office location and in plaintiff's home office. (Id. ¶ 47). Additionally, plaintiff avers that he followed up with a higher-level employee regarding his medical issues and the possible need for short-term disability after this meeting. (Id. ¶ 54). Plaintiff also alleges the defendant never followed through on the promised accessibility accommodations. (Id. ¶ 48). Rather, defendant terminated

plaintiff based on an alleged violation of defendant's computer policies approximately three weeks after the meeting. (Id. ¶ 56). In light of the facts pled, plaintiff has sufficiently alleged causation. Defendant's motion to dismiss Count III of the amended complaint will thus be denied.

### 2. Counts IV and V – PHRA Disability Discrimination and Retaliation Claims

Next, defendant moves to dismiss both of plaintiff's PHRA claims arguing that plaintiff failed to exhaust his administrative remedies. (Doc. 17, p. 9-10). In this matter, plaintiff filed a dual charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC") on November 16, 2022.[6] (Doc. 17, Exh. 1). He then initiated this action asserting PHRA claims on July 7, 2023, approximately seven months later. (Doc. 1).

The PHRA requires that a discrimination complaint must be first brought to the PHRC, which has exclusive jurisdiction over the claim for one year. See Burgh v. Borough Council of Borough of Montrose, 251 F.3d 465, 471 (3d Cir. 2001); 43 PA. STAT. § 962(b). A PHRA complainant may not file an action in

---

[6] A court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Plaintiff does not contest the authenticity of the charge of discrimination that he dual-filed. The court will thus consider this document.

court during this period. Id. A complainant, however, may bring a court action regardless of whether or not he has received a letter from the PHRC after that one-year period. Id.

"The Pennsylvania Supreme Court has explicitly held that a discharged employee cannot file a PHRA claim in the judicial system without first exhausting administrative remedies." Tlush v. Mfrs. Res. Ctr., 315 F. Supp. 2d 650, 656 (E.D. Pa. 2002)(citing Clay v. Advanced Comput. Applications, Inc., 559 A.2d 917, 920 (Pa. 1989)). Some federal courts have dismissed PHRA claims with prejudice where plaintiffs filed suit before the one-year period has passed. Id. at 656-657 (collecting cases); DeAngelo v. DentalEZ, Inc., 738 F. Supp. 2d 572, 588 (E.D. Pa. 2010)(rejecting arguments on summary judgment that an amended complaint filed after the PHRA's one-year time period cures any exhaustion defects). At the motion to dismiss stage, courts in this district have dismissed PHRA claims without prejudice with leave to amend on the issue of administrative exhaustion. Rife v. Borough of Dauphin, 625 F. Supp. 2d 212, 217 (M.D. Pa. 2008).

As noted above, plaintiff dual-filed his complaint with the EEOC and the PHRC. The law provides that:

> Through a dual-filing agreement, the PHRC and the EEOC enter into an arrangement through which they apportion initial jurisdiction over discrimination complaints in order to avoid unnecessary duplication of investigatory time and

13

> effort. Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997). Under a dual-filing agreement, each agency waives its right to initially review claims that are first filed with the other agency. Id. at 926. As such, a claim that is filed first with the EEOC can be processed by the EEOC, without being investigated as an initial matter by the PHRC. Id. Therefore, Pennsylvania waives its statutory right to initially process discrimination claims, and hence the agreement operates to "terminate" the PHRC proceedings with respect to those complaints that are filed first with the EEOC. Id. Dual-filing an EEOC charge of discrimination satisfies the PHRA's prerequisites. See Remp v. Alcon Labs., Inc., 701 Fed.Appx. 103, 106 (3d Cir. 2017).

Simon v. IPS-Integrated Project Servs., LLC, No. CV 17-03474, 2018 WL 3585137, at *3 (E.D. Pa. July 26, 2018)(Jones, J).

Plaintiff attached his EEOC right-to-sue letter dated May 26, 2023 to the amended complaint. (Doc 12-1). The notice attached advised plaintiff that he had ninety (90) days to pursue his ADA claims against defendant. (Id. at p. 2). Plaintiff filed suit in this action raising ADA and PHRA claims on July 7, 2023. (Doc. 1). Although the PHRA claims were filed within the one-year period where the PHRC would have jurisdiction under Pennsylvania law, the court cannot rule out that the PHRC waived its right to process plaintiff's claim and terminated the proceedings. Before dismissing a complaint for failure to state a claim upon which relief may be granted, a court must grant the plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3d Cir. 2002).

Accordingly, defendant's motion to dismiss plaintiff's PHRA claims (Count IV-V) will be granted, but these claims will be dismissed without prejudice. Plaintiff will be granted leave to file a second amended complaint alleging any relevant facts as to the administrative exhaustion issue.

**Conclusion**

For the reasons set forth above, defendant's motion to dismiss will be **GRANTED** in part and **DENIED** in part. Defendant's motion to dismiss plaintiff's requests for compensatory damages in Count III and Count VI will be **GRANTED** as unopposed. Defendant's motion to dismiss Count III regarding plaintiff's claim for ADA retaliation will otherwise be **DENIED**. Defendant's motion to dismiss Counts IV-V regarding plaintiff's PHRA disability discrimination and retaliation claims will be **GRANTED**. Plaintiff's PHRA claims in Counts IV-V, however, are dismissed without prejudice. Plaintiff may file a second amended complaint within twenty (20) days of this order asserting any additional facts regarding administrative exhaustion of his PHRA claims or these claims will be dismissed. An appropriate order follows.

Date: 3/26/24

_____
JUDGE JULIA K. MUNLEY
United States District Court